# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# DANVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No.: 4:18-CR-00011-MFU-RSB |
| | ) | |
| SHABBA LARUN CHANDLER, | ) | |
| | ) | |
| Defendant | ) | |

### REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S EMERGENCY MOTION FOR A SEVEN (7) DAY ABEYANCE OF START OF TRIAL AFTER JURY SELECTION/SWEARING IN

COMES NOW, Defendant Shabba L. Chandler (the "Defendant"), by and through his counsel of record, and hereby states as follows for his Reply Memorandum in Support of Defendant's Emergency Motion for a Seven (7) Day Abeyance of Start of Trial After Jury Selection/Swearing In:

### FACTUAL BACKGROUND

*The Three Deshawn Anthony Statements*

The Government's theory underpinning the issue before the Court is that the Rollin 60s Crips gang and the Milla Blood gang joined forces in an attempt to kill a rival blood gang (the Billys) leader known as PeterRoll. The Government avers that PeterRoll was a target because he expressed dissatisfaction that the two historically rival gangs had joined forces. To counter and overcome his "dissatisfaction" with the arrangement between the two rival gangs, they attempted to lure PeterRoll to Southwyck Apartments (North Hills Court) in Danville, Virginia so they could ambush and murder him. The plan, however, went awry and an innocent bystander was killed when he was mistaken for PeterRoll.

1

Deshawn Anthony (hereinafter "Anthony") is the alleged leader of the Milla Bloods organization. As its leader, it is axiomatic that he should be the most familiar with the innerworkings of the organization, membership, and daily activities. In June 2017, Anthony was arrested in Cassell County, North Carolina. Upon his arrest, and in the hope to secure leniency, he sought out Danville investigators to discuss criminal activity, including the North Hills Court shooting/murder which forms a central part of the instant criminal case.

As soon as investigators arrived in North Carolina, Anthony began discussing intimate details of the Milla organization. He wrote a list of the alleged membership of both the Milla and Rollin 60s and even describes how the Billys organization was run. At the urging of the investigators, the interview quickly turned to the North Hills Court murder. Anthony stated that the dispute which led to the shooting was a battle between the two different blood gangs (i.e. Milla/Billy). He stated that the dispute originated, in part, because PeterRoll was upset with Tredarius Keene (a.k.a "Bubs") for hanging with Kevin Trent (a.k.a. "Badass).

While claiming he was not present at the shooting, Anthony told investigators that Demetrius Staten (a.k.a. "Truck") and Bubs came to his house after the shooting and debated who fired the fatal shot. A week later, Truck returned to Anthony's residence and confessed to firing the fatal shot and being haunted by having watched the victim die. Anthony also provided information about whom he believed was at North Hills Court at the time of the murder.

Later in the interview, Anthony claimed that Truck was the *de facto* leader of the Milla organization and that a falling out occurred between Truck and Anthony because Truck tried to have sex with his wife. After providing further details, Anthony, essentially, pinned the bad actions of the Millas on Truck, which included the fact that Truck was the true culprit of the murder. Finally, Anthony insisted that he was not present at the North Hills Court murder.

2

Approximately three months later, Anthony gave another statement to law enforcement while in custody. During the interview, investigators pressed Anthony as to his involvement in recent shootings. Anthony stated that he was aware of the homicide in North Hills Court in Danville but provided few details. Later, Anthony claimed that he had an alibi for the night of the would be PeterRoll ambush. In the same interview, Anthony gave little to no information concerning the Milla organization.

Four days later, Anthony was interviewed for a third time. Officers unsuccessfully pressed him for information concerning the North Hills Court murder. The second and third interviews were conducted by a completely different set of investigators and can fairly be characterized as the 'one-sided' musings of the officers who repeatedly tell Anthony a version of events which they believe to be accurate but to which they do not really allow him to respond.

### *The Defense Attempts to get the First Video and the Government's Response*

The Government provided various videos in its first several productions which contained Anthony's statements. As defense counsel reviewed these videos, consulted with their respective clients, and continued to review the discovery - it was determined that the first interview and all files associated with Anthony's first interview were corrupted. Upon learning about the corrupted and unplayable files, several defense attorneys requested that the Government provide a playable copy. The Government responded that the video was lost or destroyed. As trial approached, defense counsel renewed their previously given request(s) for a playable copy of the video. Two days before the start of trial, the Government produced a working copy of the first interview.

Within hours of receipt, undersigned counsel herein (along with counsel for Dashaun Trent, Phillip Miles, and Marcus Davis) reviewed the first interview and outlined the material

3

differences discussed below. Immediately upon first viewing the "lost/found" video, defense counsel filed an emergency motion seeking entry of an order granting an abeyance of the commencement of trial following the selection and swearing of the jury. The Government filed its response on October 8, 2019.

In its response, the Government argued that the defense was provided with a written statement of the first interview and that much of the information inculpates three of the Crips Defendants. The Government further argued that Anthony's statement of facts (prepared by the Government) contradicts his statements in the first interview. Finally, the Government argued that Anthony will not likely be called as a witness and thus the defense request is without merit. In fact, it is the arguments of the Government which lack merit. Moreover, the Government fails to recognize and ignores the fact that this situation was wholly created by its inability to secure (and provide) a working copy of the video *until two days before trial*.

## ARGUMENTS & AUTHORITIES

I. **THERE ARE SIGNIFICANT AND MATERIAL DIFFERENCES BETWEEN ANTHONY'S VARIOUS STATEMENTS**

*a. The Material Differences Mandate a Continuance of the Start of the Trial*

To gain a complete appreciation for the material differences between the various statements, the Court should watch the entirety of each statement. They are summarized as follows:

| Statement 1 | Statement 2 | Statement 3 |
| --- | --- | --- |
| Discusses North Hills Court shooting | No meaningful discussion of the shooting. | No meaningful discussion of the shooting. |

| Claims Truck was the shooter | No claim | No claim |
|---|---|---|
| Claims Truck was *de facto* leader of Milla Bloods | No leadership discussion | No leadership discussion |
| States that it was Blood v. Blood issue | No discussion as to cause of shooting | No discussion as to cause of shooting |
| Provides membership list of Milla organization and discusses gang organization in Danville | No discussion of gang organization | No discussion of gang organization |
| Requests leniency | States he has an alibi | States he has an alibi |
| Claims he is a member of the Mad Stone Bloods | No claim | No claim |

These statements contain material differences and a written summary is no substitute for the spoken word, facial nuances, and demeanor of a key alleged co-conspirator. The first interview is the only meaningful statement that Anthony made concerning these events until he signed a statement of facts prepared by the Government. Thus, it is imperative that defense counsel have an opportunity to adequately review the statement and conduct a thoughtful review of its contents as compared to the multiple other statements made by Anthony.

    *b. The Statement is Not the Only Meaningful Material Contained in the First Videotaped Interview*

The Government's arguments and the production of a one paragraph writing memorializing the first interview ignore the fact, that during the interview, Anthony authors a purported gang roster containing the names of individuals said to be members of the Rollin 60s Crips and Milla Bloods. That one paragraph writing, attached as Exhibit 1 to the Government's Reply in Opposition, makes no mention of the gang roster. Critically, some (but not all) of the

Defendants learned of the existence of this writing for the first time on October 6, 2019 (one day before trial) when they were able to finally view the video. The start of the trial should be delayed togive the Government time to locate this writing and so that the Defendants can inspect its content.

**II. DEFENSE COUNSEL NEEDS ADDITIONAL TIME TO INVESTIGATE THE DETAILS SURROUNDING THE FIRST STATEMENT AND ITS ALLEGATIONS**

For the Government to disclose this type of critical evidence on the eve of trial is, at best, troubling. The 'trouble' is compounded in the instant case because the penalties faced by these defendants (mandatory life in some cases) are so draconian. This is not routine evidence. To the contrary, this is a statement by the leader of an organization with whom each and every Defendant on trial is alleged to have conspired in order to commit murder in aid of racketeering. The evidence bears directly on whether or not Anthony will be a defense witness and impacts the Government's trial narrative in the most critical way. The newly disclosed information in the videotape must be investigated so that defense counsel can fulfill their ethical duties and due diligence under the Fifth and Sixth Amendments.

**III. THE GOVERNMENT'S ARGUMENTS ARE MERITLESS**

The Government argues that the video has no real value as it inculpates at least three (3) Crips defendants. This is shortsighted and completely overlooks the fact that there are eight (8) defendants on trial and the video is potentially *exculpatory* to each of those defendants. For example, if the Government is correct and Anthony's statement of facts is accurate, would it not be important to the Court and the Defendants that it is contradicted by his first statement to law enforcement? Should the Defendants not be permitted to investigate the claims that

Anthony was telling the truth when he sought out law enforcement from Virginia, while detained in North Carolina and volunteered evidence regarding a murder? Any defendant not mentioned by Anthony in the video has a strong claim to assert that he was telling the truth and that he/she was not present at the North Hills Court murder. The video contains exculpatory information and could potentially lead to additional exculpatory evidence- as outlined herein.

The Government also argues that defense counsel cannot use the newly discovered statement to impeach its witnesses. We disagree. The fact that the video was shown to other Government witnesses in an effort to ensure their cooperation is highly relevant and ripe for cross-examination. It goes to both motive and bias. The cooperating witnesses to whom the video was shown (some of whom may be unknown to defense counsel due to a lack of time to investigate) could be called to testify and explain how the video impacted their desire to "assist" the Government and whether or not it influenced his or her decision to cooperate. Simply put, time is needed to ensure that a proper investigation is conducted to determine a whole host of issues involving this newly disclosed evidence.

## CONCLUSION

This is a case, for some defendants, where the permanent deprivation of liberty hangs in the balance. In such matters, haste should be avoided and thoroughness should be the watchword. A meaningful, but short, continuance of the start of the trial will ensure that each defendant receives a fair trial within the full panoply of protections afforded by the Fifth and Sixth Amendments.

    Respectfully submitted,

    SHABBA LARUN CHANDLER

    By: /s/   Aaron Balla Houchens
        Of Counsel

Jeffrey L. Dorsey, Esq. (VSB #32702)
JEFFREY L. DORSEY, P. C.
25 Library Square
Salem, Virginia 24153
(540) 389-8800 (telephone)
(540) 389-7122 (facsimile)
jeff@dorseylawfirm.com

Aaron B. Houchens, Esq. (VSB #80489)
AARON B. HOUCHENS, P.C.
111 East Main Street
P.O. Box 1250
Salem, Virginia 24153
540-389-4498 (telephone) 540-339-3903 (facsimile)
aaron@houchenslaw.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th of October 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and the foregoing was electronically transmitted through the CM/ECF system to the following CM/ECF participants:

Ronald Huber, Esq.
Heather L. Carlton, Esq.
Assistant United States Attorneys
U.S. Attorney's Office for the Western District of Virginia
U.S. Courthouse and Federal Building
255 West Main Street
Charlottesville, Virginia 22902
ron.huber@usdoj.gov
heather.carlton@usdoj.gov

/s/     Aaron Balla Houchens