IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) Case No.: 4:18-cr-00011 |
| v. | ) |
| | ) |
| | ) |
| MARCUS JAY DAVIS, et al., | ) |
| | ) By: Michael F. Urbanski |
| Defendants. | ) Chief United States District Judge |

## AMENDED MEMORANDUM OPINION[1]

This matter is before the court on the motion of the defendants to dismiss this case for Brady violations and prosecutorial misconduct due to late production of certain discovery materials, namely state grand jury testimony concerning gang activities in Danville, Virginia. Oral argument on the motions was held on October 17, 2019, which has been followed by many email communications[2] and ECF filings. The court has reviewed the late breaking state grand jury testimony and considered the arguments and filings related thereto and concludes that defendants have suffered no prejudice as a result of the late production of these materials. As a result, the defendants' motion to dismiss, ECF No. 957, is **DENIED**.

I.

The indictment in this case was originally handed down on June 11, 2018 and was superseded on November 6, 2018. The court issued a Scheduling Order on December 4, 2018,

---

[1] Section V is amended to clarify the record.
[2] As the discovery saga unfolded over the next few days, the prosecution emailed additional state grand jury testimony to the court and defense counsel. Further complicating the problem was a regional ECF failure over the weekend of October 19-20, 2019, which caused the parties to email, rather than ECF file, certain pleadings over that weekend. All such pleadings have since been filed on ECF.

setting the case for trial on October 7, 2019 and requiring the government to substantially complete all pretrial discovery by April 1, 2019. The Scheduling Order also established several pretrial status hearings at which the status of discovery was addressed in open court. Many pretrial issues were raised by the parties and addressed by the court. By all accounts, massive amounts of discovery material were provided by the government in this case.

Trial commenced on October 7, 2019, and jury selection was completed on October 15, 2019.[3] That evening, counsel for Deshaun Trent filed a Motion to Produce Special Grand Jury Transcripts, ECF No. 924, seeking discovery of certain state grand jury testimony not produced in discovery. This motion was joined by the other defendants. See ECF Nos. 925, 926, 928, 930, 931.

The issue of the nonproduction of state grand jury transcripts was addressed in court on October 16, 2019, and the prosecution affirmatively responded to the court's question asking whether testimony of Ontwoinette Epperson and Lashanda Washington taken on November 9, 2017 "are the only transcripts from the state multi-jurisdictional grand jury that have not been produced in discovery that relate to the allegations in this case." Tr., October 16, 2019, ECF No. 954, at 10. Defense counsel then apprised the court of a police report dated December 17, 2015 produced in discovery which stated "[a] special grand jury was called and held in the Commonwealth Attorney's office regarding the spree of shooting incidents in the City of Danville. Multiple individuals that were persons of interest in these matters were brought before the grand jury and questioned under oath. Investigation continues." Id. at 12-

---

[3] Immediately prior to trial, the defense asked that the court allow a one-week continuance after the jury was empaneled to allow counsel to evaluate a recently disclosed videotape of a police interview with DaShawn Anthony, which the court denied by Memorandum Opinion and Order dated October 11, 2019. ECF Nos. 905 and 912.

2

13. After further questioning, the prosecution agreed that it needed to answer the question whether additional state grand jury testimony related to the charges in this case existed that had not been produced and sought a recess to investigate. After a short recess, the prosecution advised that the defense was "entitled to this information 100 percent," id. at 21, but noted that it would take longer to get an accurate and thorough answer. The prosecution suggested, and defense counsel agreed, to excuse the jury and reconvene the next day without the jury to report on the status of its investigation into state grand jury testimony.

At the hearing held the next day, October 17, 2019, the prosecution reported that certain additional state grand jury transcripts had been transcribed and produced or were in the process of being transcribed. The prosecution indicated that its review was ongoing and that it may need an additional few days to prepare transcripts. As a result, the government requested a brief delay in the trial. Defendants orally moved to dismiss the First Superseding Indictment based on claimed Brady violations and prosecutorial misconduct.

On October 18, 2019, the government filed an affidavit by Michael J. Newman, the Commonwealth's Attorney for the City of Danville, Virginia, and Special United States Attorney, ECF No. 946, wherein he describes the state grand juries that were empaneled by him between 2015 and 2018 to investigate violent crime in and around Danville, Virginia. In his affidavit, Mr. Newman acknowledges that he failed to inform the prosecution team about the various grand juries and the relevant witnesses that were called. Additionally, Mr. Newman withdrew as counsel of record for the United States.[4]

---

[4] The court construes such a statement as a motion to withdraw. The court has taken the motion under advisement. Until further order of the court, Mr. Newman remains counsel of record in this federal case.

3

Because the prosecution's production of state grand jury transcripts would not be completed in time to allow meaningful review before the jury was to report on October 21, 2019, the court instructed the clerk to notify the jury that they should report on Wednesday, October 23, 2019. Over the weekend of October 19-20, 2019, several defendants filed written motions and memoranda in support of motions to dismiss, ECF Nos. 957-961, 963, to which the prosecution responded on October 21, 2019. ECF No. 962. Additionally, the prosecution continued to email copies of state court grand jury testimony and other information requested by the court. Ultimately, the resumption of the trial was scheduled for October 28, 2019.

After review and analysis of the state grand jury testimony provided by the prosecution over the past week, the court concludes that the late production of this testimony does not prejudice any of the defendants requiring dismissal of the First Superseding Indictment. While the state grand jury testimony generally concerns violence in Danville, Virginia, much of it concerns acts of violence separate from the attempted murder of Armonti Womack and Dwight Harris on June 15, 2016, the murder of Christopher Motley and attempted murder of Justin Wilson on August 20, 2016, and the attempted murder of Tyliek Conway on August 24, 2016, which are central to this trial. The state grand jury testimony that does concern the issues central to this case, such as the Epperson and Washington testimony regarding their role in the events of August 20, 2016, is largely cumulative of other discovery previously produced. Moreover, the state grand jury transcripts were produced to defendants before the first witness testified in this case, and the court delayed the trial by more than ten days to allow the defense time to review and process the transcripts.

4

Nevertheless, the delay in the production of these state grand jury transcripts is an inexcusable oversight by the prosecution. Given the fact that the state grand jury transcripts were required to be produced months ago, but were not produced until after trial commenced, certain sanctions and evidentiary limitations, as listed herein, are appropriate under Fed. R. Crim. P. 16(d)(2)(C) and (D).

## II.

### A. Brady Violation.

The Due Process Clause requires the government to disclose "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment." Brady v. Maryland, 373 U.S. 83, 87 (1963). To establish a Brady violation, a defendant must show that the undisclosed evidence was (1) favorable to the defendant, either because it was exculpatory or because it was impeaching; (2) material to the defense, i.e., prejudice must have ensued; and (3) that the prosecution had materials and failed to disclose them. See Banks v Dretke, 540 U.S. 668, 691 (2004); United States v. Young, 916 F.3d 368, 383 (4th Cir. 2019).

"Prejudice ensues if there is a reasonable probability that the jury would have reached a different result had the evidence been properly disclosed." Owens v. Baltimore City State's Attorneys Office, 767 F.3d 379, 397 (4th Cir. 2014) (internal citations omitted). For the evidence to be prejudicial to the defendants, it must also be more than speculative. United States v. Caro, 597 F.3d 608, 619 (4th Cir. 2010); United States v. Agurs, 427 U.S. 97, 109-10 (1976) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."). Likewise, undisclosed evidence does not rise to the level of a Brady

violation where the evidence is cumulative and has been provided to the defendants in another manner. See United States v. Parker, 790 F.3d 550, 558 (4th Cir. 2015) ("impeachment evidence is not material if it is cumulative of evidence . . . already presented and thus would have provided only marginal additional support for the defense.") (internal citations omitted); see also Johnson v. Folino, 705 F.3d 117, 129 (3d Cir. 2013) ("Suppressed evidence that would be cumulative of other evidence . . . is generally not considered material for Brady purposes.").

## B. Prosecutorial Misconduct.

In order to dismiss an indictment for prosecutorial misconduct, a court must find that the defendants were prejudiced by the misconduct. Bank of Nova Scotia v. United States, 487 U.S. 250, 263 (1988) (A district court has "no authority to dismiss the indictment on the basis of prosecutorial misconduct absent a finding that petitioners were prejudiced by such misconduct."); see also United States v. Derrick, 163 F.3d 799, 807 (4th Cir. 1998) ("[T]he Court's analysis and the text of its opinion confirm that Nova Scotia's holding applies equally to prosecutorial misconduct that occurs at the pretrial and trial stages of a prosecution."). The Fourth Circuit has held that "the dismissal of an indictment altogether clearly thwarts the public's interest in the enforcement of its criminal laws." Derrick, 163 F.3d at 807. Accordingly, such a remedy may be applied not to "chastise what the court view[s] as prosecutorial overreaching," or even in the interest of deterring future similar conduct, but only after finding prejudice to the defendant and concluding that no less drastic remedy will serve. See United States v. Hasting, 461 U.S. 499, 507–08 (1983) (concluding that the appellate court erred in failing to analyze constitutional violations committed by the prosecution under the "harmless error doctrine" when reversing defendants' convictions); see also Derrick, 163

F.3d at 807 (analyzing <u>Hasting</u> and concluding that the harmless error doctrine applies equally to the dismissal of an indictment as to the reversal of a conviction) ("It would seem to follow, a <u>fortiori</u>, from the Court's holding in <u>Hasting</u> that a court may not, without finding prejudice to the defendant, exercise its supervisory power to reverse a defendant's conviction and require a retrial based upon prosecutorial misconduct, that a court may not dismiss an indictment altogether on this ground without also finding prejudice.").

### III.

After jury selection was completed and the jury sworn, and between October 15, 2019 and October 21, 2019, the prosecution produced to the defense and the court the following state grand jury transcripts:

1. Ontwionette Epperson. City of Danville/Pittsylvania County Multijurisdictional Grand Jury ("MJGJ"), November 9, 2017.
2. Lashonda Washington. MJGJ, November 9, 2017.
3. Brian Crutchfield. MJGJ, December 17, 2015.
4. Marquis Skipwith. MJGJ, December 17, 2015.
5. Wydarius Brandon. MJGJ, December 17, 2015.
6. Laquante Adams. MJGJ, December 12, 2016.
7. Courtney Davis. MJGJ, December 16, 2016.
8. Tanikqua Fuller. MJGJ, August 17, 2017.
9. Tyson Bowens. Danville Special Grand Jury, February 22, 2018.
10. Demonte Lipscomb. Danville Special Grand Jury, February 22, 2018.
11. Curshun Miller. Danville Special Grand Jury, February 22, 2018.
12. Detective Richardson. MJGJ, November 9, 2017.
13. Detective Whitley. MJGJ, November 9, 2017.
14. Detective Whitley. MJGJ, December 12, 2016.
15. Detective Gourley. MJGJ, December 12, 2016.

In response to the court's request for additional information, the prosecution also provided the court with the federal grand jury testimony of Ontwionette Epperson, Lashonda Washington and Tyson Bowens. Additional information, such as police interview reports and FBI 302 forms, produced in discovery regarding Tyson Bowens, Laquonte Adams, and

7

Jaquanta "Boosie" Walton, an individual mentioned in Courtney Davis's MJGJ testimony, were also provided to the court for review.

The court has reviewed all of this testimony and the other information provided. Based on the court's review of this information, the oral argument, and legal memoranda submitted, the court finds that there is no basis to suggest that the defendants have been prejudiced by the late disclosure of the state grand jury transcripts. As such, a dismissal of the First Superseding Indictment as requested by all defendants is not warranted.

**A. Ontwionette Epperson and Lashonda Washington.** Although the government advised the jury that both Washington and Epperson may be called as trial witnesses, the government has since advised the court that they would not be called as trial witnesses. Moreover, with a few relatively minor discrepancies, the late produced MJGJ testimony of Washington and Epperson is substantially the same as the federal grand jury testimony of these witnesses regarding their involvement in the events of August 20, 2016. The government advises that Washington's and Epperson's federal grand jury testimony was produced in discovery to defendants in a timely manner. After reviewing both the MJGJ and federal grand jury testimony of these witnesses, the court discerns no prejudice to defendants from the late disclosure of the MJGJ testimony. This is particularly true given the government's representation that neither Washington nor Epperson will be called as prosecution witnesses at trial. In their testimony, Epperson and Washington testify concerning their involvement in providing rides to and from the site of the Christopher Motley murder on August 20, 2016. Review of this testimony does not suggest that it is favorable to the defendants in any respect. Given that the subject matter of the Epperson and Washington testimony is not favorable to

8

defendants and that that the substance of their testimony was disclosed to the defense in their federal grand jury testimony, the late production of their state grand jury testimony, although in violation of the court's Scheduling Order, does not rise to the level of an unconstitutional Brady violation.

**B. Brian Crutchfield, Marcus Skipwith and Wydarius Brandon.** In their MJGJ testimony given on December 17, 2015, Crutchfield, Skipwith and Brandon testify as to the shooting of Robert "Jay" Kennedy on December 5, 2015. None of these three witnesses is on the prosecution's witness list in this trial, nor is their testimony favorable to defendants. As such, the court discerns no prejudice from the late disclosure of this MJGJ testimony. However, as it appears that the defense had no corresponding federal grand jury testimony regarding these three witnesses, the prosecution may not call these three witnesses in its case in chief to testify as to any subject matter addressed in the late disclosed MJGJ testimony.

**C. Laquante Adams.** Adams, named as a defendant in the First Superseding Indictment and a prosecution cooperating witness, gave MJGJ testimony on December 16, 2016 concerning gang organization in Danville, Virginia, and an incident in which he was shot. This MJGJ testimony was not produced to defendants until the evening of October 17, 2019. Despite this late disclosure, the court discerns no prejudice to defendants given the detailed FBI Form 302 produced in discovery on these matters. The government asserts as well that "[t]he discovery in this case contains multiple interviews of Laquante Adams containing the same statements and information the defendants now claim is new." Response to Defendant's Motions to Dismiss and for Sanctions, ECF No. 962, at 3. Specifically, the government states that in a November 28, 2016 recorded (post-arrest) interview, Adams discussed gangs in

9

Danville, Virginia, including the origin of some "beefs" (including a fight at a high school), various shootings, and the "600s, 700s and 800s." Id. Adams provided additional information regarding gang activity in Danville, Virginia contained in his recorded interviews on December 20, 2017 and November 2018, and proffer sessions on March 11 and March 20, 2019, all of which was produced in discovery. Defendants do not mention the breadth of discovery regarding Adams in this case. Moreover, the court is not aware of anything favorable, whether exculpatory or for impeachment, to defendants in Adams' state grand jury testimony. In any event, given the delay in the trial for more than ten days, the defendants are not prejudiced by its late production.

**D. Courtney Davis.** Davis provided MJGJ testimony on December 16, 2016 concerning gang organization in Danville, Virginia and various gang-related events that took place in the Danville area, including information about the Christopher Motley murder on August 20, 2016. Specifically, Davis identified a potential suspect named Jaquanta "Boosie" Walton. Davis testified that "[s]ome people say it was Boosie." Davis Test., pp. 74. This MJGJ testimony was not produced to defendants until the evening of October 17, 2019. Despite this late disclosure, the court discerns no prejudice to defendants given that Davis' statements were both cumulative of evidence already disclosed to defendants and speculative. First, on August 1, 2018, the prosecution disclosed a video interview of Tredarius Keene where he contends that he saw Boosie at North Hills Court at the time of the murder, identifying him as a potential suspect. The prosecution also disclosed a summary of that video on October 2, 2018 to defendants. Second, the court finds that Davis' MJGJ testimony regarding Boosie is speculative. Davis testified that his assertion that Boosie may have been the shooter was reliant

10

on rumors that he heard and that he did not have personal knowledge of the events in this case. Davis could not even identify the source of the rumors. Given that the identity of Boosie was disclosed to the prosecution in the Keene interview and the subject matter of Davis' testimony is speculative, the late production of Davis' state grand jury testimony, although in violation of the court's Scheduling Order, does not rise to the level of an unconstitutional Brady violation. Regardless, because this MJGJ testimony was not disclosed until after the trial commenced, the prosecution may not call Davis in its case in chief to testify as to any subject matter addressed in the late disclosed MJGJ testimony.

**E. Tenikqua Fuller.** Defendant Fuller provided MJGJ testimony on August 17, 2017 concerning a shooting which took place on August 6, 2017 on Paxton Street in Danville, Virginia. In the instant case, Fuller was charged with being an accessory after the fact to the murder and attempted murder that occurred on August 20, 2016. Because Fuller's late disclosed MJGJ testimony does not pertain to the sole charge she faced in this case, the court discerns no prejudice to Fuller from the late disclosure of her MJGJ testimony. Regardless, because this MJGJ testimony was not disclosed until after the trial commenced, the prosecution may not introduce evidence pertaining to Fuller's presence at the scene of the August 6, 2017 Paxton Street shooting or any other matter covered by her late disclosed MJGJ testimony.

**F. Tyson Bowens.** Bowens provided MJGJ testimony on February 22, 2018 concerning a shooting which took place on Ross Street in Danville, Virginia on December 22, 2017. The court reviewed this testimony, along with Bowen's federal grand jury testimony, FBI Form 302, and Danville Police Department case reports that the prosecution previously

11

produced to defendants. The court discerns no prejudice to the defendants because of the detailed discovery previously produced. Again, this testimony cannot be considered to be favorable to defendants. Regardless, because this MJGJ testimony was not disclosed until after trial commenced, the prosecution may not introduce into evidence or question Bowens regarding the December 22, 2017 shooting on Ross Street.

**G. Demonte Lipscomb and Curshun Miller.** As with Bowens, these witnesses testify as to the Ross Street shooting on December 22, 2017 in Danville, Virginia. These witnesses are not on the government's witness list and their testimony is not favorable to defendants. As such, there is no prejudice to defendants from the late production of their testimony.

**H. Detectives Richardson, Whitley, and Gourley.** There is nothing favorable to defendants in their state grand jury testimony on November 9, 2017 and December 12, 2016. Moreover, their testimony essentially outlines the prosecution's view of the events leading up to the murder of Christopher Motley, which has been repeated throughout this case. As such, defendants, well familiar with the prosecution's theory of this case, suffer no prejudice from the late disclosure of their testimony.

The court has considered whether the cumulative volume of these transcripts, produced after opening statements were made, is prejudicial to the defense. Upon considering the large quantity of discovery in this case, the court does not find that the late production of these state grand jury transcripts poses any prejudice to defendants, particularly given the fact

that the trial has been delayed for more than ten days, allowing the defense to review and digest these materials.[5]

## IV.

With two exceptions, defendants' motion to dismiss does not focus on the substance of this state grand jury testimony, as it is either cumulative or not favorable to defendants.[6] Rather, the thrust of these motions concerns the assertion made by the prosecution at the outset of the October 16, 2019 hearing that the Epperson and Washington state grand jury transcripts were the only ones bearing on the allegations in this case. To be sure, that representation by the prosecution was incorrect. However, after the state and federal

---

[5] Defendants also express outrage regarding the failure of the Danville Commonwealth's Attorneys Office to keep records of witnesses appearing before and subpoenaed by the state grand juries. The government has a duty to preserve evidence in its possession because of "what might loosely be called the area of constitutionally guaranteed access to evidence." Arizona v. Youngblood, 488 U.S. 51, 55 (1988); California v. Trombetta, 467 U.S. 479, 485 (1984). This duty to preserve evidence is limited to evidence that is material to defendants and that "possess[es] an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Trombetta, 467 U.S. at 488-89. The "mere possibility that lost or destroyed evidence could have been exculpatory is not sufficient to satisfy Trombetta's requirement that exculpatory value be apparent to the police before its loss or destruction." United States v. Vaughn, 453 F.App'x 424, 425 (4th Cir. 2011) (internal citations omitted) (unpublished); see also United States v. Crowell, 586 F.2d 1020, 1029 (4th Cir. 1978) (holding that mere speculation by counsel is not adequate to establish that material was exculpatory under Brady), cert. denied, 440 U.S. 959 (1979). In addition, "if the exculpatory value of the evidence is indeterminate and all that can be confirmed is that the evidence was potentially useful for the defense, then a defendant must show that the government acted in bad faith in destroying the evidence." United States v. Matthews, 373 F.App'x 386, 390 (4th Cir. 2010) (internal citations omitted) (unpublished). Further, "mere negligence on the government's part in failing to preserve such evidence is inadequate for a showing of bad faith." Id. Here, defendants only speculate as to what evidence might be missing based on the Danville Commonwealth's Attorneys Office failure to maintain records of who appeared before the state grand juries. Likewise, defendants do not show that the government acted in bad faith. While the Danville Commonwealth's Attorneys Office policy might be inadvisable, at most, it rises to the level of negligence and does not demonstrate bad faith.

[6] These exceptions are certain statements made by Laquante Adams and Courtney Davis. Defendants claim prejudice from the statements of Laquante Adams in his state grand jury testimony that the violence in Danville was more about high school beefs and groups he identified as the 600s, 700s, and 800s, as opposed to the Rollin 60s Crips. In addition, defendants claim prejudice from the MJGJ testimony of Courtney Davis that Jaquanta "Boosie" Walton was responsible for the Motley murder. As noted previously, Adams' statements about high school beefs and the numbered groups and facts regarding the presence of Jaquanta "Boosie" Walton at the August 20, 2016 shooting had been produced in discovery.

13

prosecutors conferred, the government owned up to the fact that it needed to do additional investigation to see if additional state grand jury transcripts needed to be transcribed and produced. Also, while defendants view the prosecution's initial position as mendacious, the court attributes no bad faith to the prosecution. Rather, the court believes that the federal prosecutors were blind-sided by the nonproduction of the state grand jury transcripts and sought to remedy the failure as soon as it was identified. Since the revelation of the existence of the state grand jury testimony, the court delayed the trial for more than ten days to allow defendants to weave the state grand jury testimony into their defense. Nevertheless, to ensure that the jury, which has been waiting for the trial evidence to resume for over a week, does not harbor any negative impression from this delay against defendants, the court is going to take the following necessary, albeit unusual, steps.

First, in as mundane and matter-of-fact a manner as possible, the court will advise the jury that the case was delayed due to the prosecution's late production of certain state grand jury transcripts. Second, to address the concern that the state grand jury testimony was not provided until after opening statements were made, the court will permit defense counsel an opportunity to make any additional opening statement solely occasioned by the late disclosure of the state grand jury testimony. Additional opening statements will not be permitted to address any other topic.

V.

Finally, there is one evidentiary loose end that needs to be addressed. During the Danville Police Department's late-disclosed video interview of Dashawn Anthony, Anthony is seen creating a gang organization diagram. But no diagram has been produced in discovery.

Also, the prosecution has not subpoenaed Anthony as a witness in these proceedings as he entered a guilty plea agreement on February 5, 2019, indicating he would not cooperate with the prosecution. Even if there were a change in Anthony's circumstances, absent production of that purported diagram, the government would not be allowed to question Anthony at trial concerning gang organization issues because this would be prejudicial to the defendants.

## VI.

While the delay in the production of the state grand jury testimony is inexcusable and cannot be condoned, the defendants' motion to dismiss the First Superseding Indictment is **DENIED,** subject to the sanctions and evidentiary limitations described above. At the end of the day, the bulk of the information produced was immaterial, cumulative, and speculative and was not prejudicial to the defendants. In any event, as the trial has been delayed more than ten days because of the late production, the defendants have had sufficient time to integrate this material into their defense.

It is **so ORDERED**.

Entered: 01-31-2020

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge