CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JUL 17 2023

LAURA A. AUSTIN, CLERK
BY: s/ H. MCDONALD
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Criminal Action No. 4:18-cr-00011 |
| v. | ) |
| | ) |
| SHABBA LARUN CHANDLER, | ) By: Michael F. Urbanski |
| | )      Chief United States District Judge |
| Defendant/Petitioner | ) |

**AMENDED MEMORANDUM OPINION[1]**

Shabba Larun Chandler, a federal inmate proceeding pro se, has filed a motion and an amended motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF Nos. 1462, 1467. The government responded to Chandler's motions, arguing that he is not entitled to relief, and Chandler filed a reply, ECF Nos. 1478, 1480. After reviewing the briefing and the record, the court **DENIES** Chandler's motions to vacate, set aside, or correct his sentence.

**I. Background**

On November 6, 2018, Chandler, along with eleven codefendants, was named in a 40-count superseding indictment alleging charges related to racketeering. According to the statement of facts (SOF) signed by Chandler, he was a member of a criminal organization known as the Rollin 60s Crips ("Rollin 60s"), which is a street gang. Since at least 2015, the Rollin 60s were active in the Western District of Virginia and engaged in criminal activity, including murder and attempted murder, assault resulting in bodily injury, assault with a

---

[1] The memorandum opinion is amended solely to correct an error on page 10 in the quoted recitation of the language contained in Count 10 of the Superseding Indictment. It does not affect the Order entered on July 11, 2023.

dangerous weapon, robbery, obstruction of justice, drug distribution and trafficking, and conspiracy to commit those crimes. Chandler did not participate in all the enumerated acts. SOF, ECF No. 993 at 1.

In 2015, Marcus Davis, a leader of the Rollin 60s, recruited Chandler and others to join the Rollin 60s. Id. at 2. In 2016, members of the Rollin 60s joined forces with another gang, known as the Milla Bloods ("Millas") to facilitate their criminal activities at the expense of a rival gang known as the Billy Bloods ("Billys"). Id. at 3.

In August 2016, members of the Rollin 60s and the Millas gathered in Danville, Virginia. Chandler did not attend the meeting but knew of it and later heard about what transpired at the meeting from people who attended the meeting. Chandler learned that Davis and DaShawn Anthony, the head of the Millas, agreed to work together to mutually benefit their respective drug enterprises. Davis also informed the Rollin 60s that they had authority to kill members of the Billys on sight, including the leader of the Billys, Stevie Wallace. Id.

On August 20, 2016, members of the Rollin 60s, including Chandler, and the Millas met in the apartment of one of their members. The group planned to lure Wallace and other members of the Billys to the apartment complex where gang members were fanned out in the complex and an adjoining parking lot with plans to shoot Wallace to death. At 10:30 that evening, a van pulled into the apartment parking lot and gang members started shooting. The passenger in the van, Christopher Motley, was killed in the gunfire, while the driver, Justion Wilson, was not injured. Id. at 4. Chandler fled the scene in a car driven by a member of the Rollin 60s. Id. at 4–5. The SOF further sets out that Chandler conspired with others

to distribute and did, in fact, distribute, marijuana on behalf of the racketeering enterprise. Id. at 5. Chandler stipulated to the truth of the SOF and acknowledged that if the matter had proceeded to trial, the United States would have proved the allegations beyond a reasonable doubt. Id. at 6.

Chandler was charged in 7 counts with the following: racketeering conspiracy in violation of 18 U.S.C. §§ 1962(d) and 1963 (Count 1); violent crime in aid of racketeering, to-wit: murder of Christopher Lamont Motley in violation of Virginia Code §§ 18.2-32 and 18.2-18, all in violation of 18 U.S.C. §§ 2 and 1959(a)(1) (Count 10);[2] use of a firearm in aid of racketeering, to-wit: murder of Christopher Lamont Motley, in violation of 18 U.S.C. § 1959(a)(1) as set forth in Count 10, and in the course of violation of 18 U.S.C. § 924(c), caused the death of a person through the use of a firearm, which killing is defined as murder in 18 U.S.C. § 1111(a), all in violation of 18 U.S.C. § 924(j) (Count 11); violent crime in aid of racketeering, to-wit: attempted murder of Justion Wilson, in violation of Virginia Code §§ 18.2-32, 18.2-26, and 18.2-18, all in violation of 18 U.S.C. §§ 2 and 1956(a)(1) (Count 12); use of a firearm during a violent crime in aid of racketeering, to wit: attempted murder of Justion Wilson, as set forth in Count 12, all in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count 13); violent crime in aid of racketeering, to-wit: assault with a dangerous weapon of Justion Wilson (Count 14); and use of a firearm during a violent crime in aid of racketeering, to wit: assault of Justion Wilson with a dangerous weapon, as set forth in Count 14, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count 15). Superseding Indictment, ECF No. 207.

---

[2] Offenses under 18 U.S.C. § 1959, "violent crimes in aid of racketeering," are commonly referred to as VICAR crimes.

3

On October 22, 2019, Chandler entered into an agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), in which he agreed to plead guilty to Counts 1 and 11 of the Superseding Indictment. Plea Agreement, ECF No. 991 at 1–2. The government agreed to dismiss any remaining counts at sentencing. Id. at 3. Both counts carried maximum penalties of life imprisonment. Id. at 1–2. The parties agreed to a sentencing range of 156 to 180 months. Id. at 4. As part of the agreement, Chandler waived his right to appeal except for any issue which could not be waived by law and waived his right to collaterally attack his sentence unless the attack was based on ineffective assistance of counsel. Id. at 7–8.

On October 29, 2020, Chandler was sentenced to 60 months on Count 1 and 120 months on Count 11, with the sentences to run consecutively for a total of 180 months. His term of incarceration is to be followed by a 5-year term of supervised release. J., ECF No. 1333. Chandler did not appeal his sentence.

The court received a letter from Chandler on February 28, 2022, postmarked February 24, 2022, in which he asserted that his attorney provided ineffective assistance of counsel when he did not file a notice of appeal when Chandler asked him to do so. ECF No. 1462. On March 10, 2022, Chandler was advised that the court was construing the letter as a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, and he was given an opportunity to amend his motion to include all claims he wished to raise. Order, ECF No. 1463. On April 11, 2022, Chandler filed an amended motion to vacate his sentence pursuant to § 2255, to which the government has responded and Chandler has replied. ECF Nos. 1467, 1478, 1480.

In his amended motion, Chandler asserts that he is entitled to relief under the Supreme Court decision in Borden v. United States, 141 S.Ct. 1817 (2021), and the Fourth Circuit decision in United States v. Simmons, 999 F.3d 199 (4th Cir. 2021). The government counters that Chandler's motion is untimely, he waived his right to collaterally attack his sentence except on the ground of ineffective assistance, his claim that his conviction on Count 11 is unconstitutional is meritless, and his attorney provided effective assistance.

**II. Analysis**

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States"; (2) that "the court was without jurisdiction to impose such a sentence"; or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A petitioner collaterally attacking his conviction or sentence via a § 2255 petition bears the burden of showing by a preponderance of evidence that he is entitled to relief. White v. United States, 352 F.Supp.2d 684, 687 (E.D. Va. 2004) (citing Miller v. United States, 261 F.2d 546 (4th Cir. 1958), and Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967)).

**A. Timeliness of Motion**

The government first moves to dismiss Chandler's motion as untimely. Petitioners seeking relief under 18 U.S.C. § 2255 must file within the one-year statute of limitations set out in the statute. The period begins to run from the latest of (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United

5

States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f).

Chandler's conviction became final on September 22, 2020, which was fourteen days after the court entered judgment in his case. See Clay v. United States, 537 U.S. 522, 532 (2003); Fed. R. App. P. 4(b)(1)(A). Using that date as the starting point, the one-year limitations period for filing his § 2255 motion expired on September 22, 2021. Because he did not file his motion until February 24, 2022,[3] it was untimely under § 2255(f)(1).

Chandler asserts that under § 2255(f)(3), the deadline to file a motion in his case did not begin to run until the Supreme Court issued its decision in Borden, 141 S.Ct. 1817, on June 9, 2021, and that he had one year from that date to file his § 2255 motion. However, this argument fails for two reasons. First, neither the Supreme Court nor the Fourth Circuit have held that Borden is retroactively applicable to cases on collateral review. Chandler cites United States v. Toki, 23 F.4th 1277, 1280 (10th Cir. 2022), where the Tenth Circuit held that Borden is retroactively applicable on collateral review. But the holding in Toki has since been vacated, Kamahele v. United States, 143 S.Ct. 556 (2023) (mem.), leaving its decision on retroactivity in limbo. Also, even if the Toki decision had not been vacated, decisions of

---

[3] The envelope in which Chandler mailed his first letter is postmarked February 24, 2022. While he may have placed it in the prison mail system earlier than that, he does not present any evidence regarding when he placed the letter in the prison mail system and unless he placed it in the system on or before September 22, 2021, it is untimely.

6

an appellate court are not binding on a district court in another circuit. Taylor v. Carter, No. 23-538-PJM, 2023 WL 3851795 (D. Md. June 6, 2023) (citing CASA de Maryland, Inc. v. Trump, 971 F.3d 220, 260 (4th Cir. 2020) and Virginia Soc'y for Hum. Life, Inc. v. Fed. Elec. Comm'n, 263 F.3d 379, 393 (4th Cir. 2001), overruled on other grounds by The Real Truth About Abortion, Inc. v. Fed. Election Com'n, 681 F.3d 544 (2021)). In the absence of Supreme Court or Fourth Circuit precedent on the issue of retroactivity, the court will not find that Borden is retroactively applicable on collateral review.

Second, and more importantly, the court need not address the retroactivity issue because Borden does not provide Chandler with relief from his conviction. This issue is addressed more fully below.

**B. Effect of Waiver**

As part of the plea agreement, Chandler agreed to waive his right to collaterally attack his conviction or sentence and the language of the waiver is broad: "I waive any right I may have to collaterally attack, in any future proceeding, any order issued in this matter, unless such attack is based on ineffective assistance of counsel, and I agree I will not file any document which seeks to disturb any such order, unless such filing is based on ineffective assistance of counsel." Plea Agreement, ECF No. 991 at 8. A waiver of appeal and collateral attack is valid if the waiver was knowing and voluntary. In the absence of extraordinary circumstances, a properly conducted Rule 11 colloquy establishes the validity of the waiver. United States v. Adams, 814 F.3d 178, 182 (4th Cir. 2016) (citing United States v. Copeland, 707 F.3d 522, 529 (4th Cir. 2012), and United States v. Lemaster, 403 F.3d 216, 220 (4th Cir.

7

2005)). A court also must determine whether the issue appealed is within the scope of the waiver. Copeland, 707 F.3d at 528.

At the guilty plea hearing, Chandler stated that he had gone over the plea agreement with his attorney, and had initialed each page and signed the bottom, indicating that he agreed with its terms. Plea Hr'g Tr., ECF No. 1477 at 8–9. Counsel for the government read the terms of the plea agreement into the record, including that Chandler waived his right to collaterally attack his sentence, except for any issue that could not be waived as a matter of law. Id. at 9–13. The court also explained the terms of the plea agreement to Chandler, including that he gave up his right to collaterally attack his sentence except on grounds of ineffective assistance of counsel and explained what that meant. Id. at 23–24. Chandler told the court that he understood the terms of the plea agreement and had no questions. Id. at 14–15, 24–25. Accordingly, the record establishes that Chandler knowingly and intelligently waived his right to collaterally attack his sentence and thus the waiver is valid.

The court next must consider whether Chandler's challenge to his conviction falls within the scope of the appeal waiver. Chandler argues in his motion both that he received ineffective assistance of counsel and that his conviction on Count 11 must be vacated following the decisions in Simmons, 999 F.3d 199, and Borden, 141 S.Ct. 1817. Chandler's claim that he received ineffective assistance of counsel is not waived in the plea agreement and will be discussed below.

Chandler's contention that his conviction was unconstitutional because the conduct underlying the § 924(c) conviction is not considered a crime of violence under Simmons or Borden, and that he therefore is factually innocent of the charge, goes to the heart of his

8

conviction. Thus, it falls within the waiver and he cannot bring the argument via this § 2255 motion.

Nor is it relevant that Simmons and Borden were decided after his conviction. As the Fourth Circuit noted in United States v. Blick, 408 F.3d 162, 173 (4th Cir. 2005), "'Plea bargains rest on contractual principles, and each party should receive the benefit of its bargain.'" (quoting United States v. Ringling, 988 F.2d 504, 506 (4th Cir. 1993)). See also Copeland, 707 F.3d at 529 (finding a defendant cannot invalidate an appeal waiver to claim the benefit of subsequently decided case law); United States v. Bradley, 400 F.3d 459, 466 (6th Cir. 2005) (noting that parties have "ample room to tailor plea agreements to different needs-whether they are the right to appeal, the right to benefit from future changes in the law or other concerns that the defendant (and his attorney) may have" and that in the absence of such a condition, a defendant's "willingness to be sentenced under the Guidelines and generally to waive his right to appeal binds him no less now than it did when he signed the agreement.")

In Chandler's case, he faced a maximum statutory sentence of life on both counts and a minimum sentence of ten years on Count 11. Presentence Investigation Report ("PSR"), ECF No. 1318 ¶ 117. The parties agreed to a sentence of 12 to 15 years and in exchange, Chandler gave up his right to collaterally attack his sentence. He received the sentence for which he bargained, and he cannot now attempt to circumvent the agreement by citing to cases that were decided after his plea bargain was accepted and he was sentenced by the court.

To be sure, a court will not enforce an otherwise valid waiver if to do so would result in a miscarriage of justice. United States v. Adams, 814 F.3d 178, 182 (4th Cir. 2016) (citing United States v. Johnson, 410 F.3d 137, 151 (4th Cir. 2005)). "A proper showing of actual innocence is sufficient to satisfy the miscarriage of justice requirement." United States v. Sweeney, 833 F. App'x 395, 396 (4th Cir. 2021) (internal citations omitted). However, Chandler cannot make that showing here.

In Simmons, the Fourth Circuit applied the categorical approach to the RICO conspiracy statute, 18 U.S.C. § 1962(d), and determined that convictions for RICO conspiracy and aggravated RICO conspiracy are not crimes of violence for purposes of 18 U.S.C. § 924(c). See discussion, Simmons, 11 F.4th at 253–261. Because an aggravated RICO conspiracy offense can be completed without the use, attempted use, or threatened use of physical force, "an aggravated RICO conspiracy is not categorically a crime of violence." Id. at 260.

But Chandler's § 924(j) conviction was not predicated on his Count 1 RICO conspiracy conviction. Rather, it was predicated on Count 10 of the Indictment, "Violent Crime in Aid of Racketeering, to-wit: Murder of Christopher Lamont Motley." Superseding Indictment, ECF No. 207 at 13–14. The relevant language from Count 10 is the following:

> On or about August 20, 2016, in the Western District of Virginia, for the purpose of maintaining and increasing position in the Rollin 60s, an enterprise engaged in racketeering activity, … SHABBA LARUN CHANDLER … did murder Christopher Lamont Motley, in violation of Virginia Code Sections 18.2-32, 18.2-18.
>
> All in violation of Title 18, United States Code, Sections 2 and 1959(a)(1).

10

Id. The Fourth Circuit has held that VICAR murder is a crime of violence for purposes of § 924(c).[4] United States v. Mathis, 932 F.3d 242, 265 (4th Cir. 2019). See also United States v. Bran, No. 3:12CR131, 2021 WL 4099011, at *4 (E.D. Va. Sept. 8, 2021) (finding that conviction for VICAR murder served as valid predicate offense for conviction under 18 U.S.C. §§ 924(c)(1)(A) and (j)); United States v. Davis, No. 4:18-cr-11, 2019 WL 3307235, at *3–7 (W.D. Va. July 23, 2019) (rejecting argument that murder, whether defined generically or as set forth in Va. Code § 18.2-32, is not a crime of violence for purposes of § 923(c)(3)(A)); and Gordillo Portocarrero v. United States, No. 1:16-cv-00763 (LMB), No. 1:10-cr-00066-1 (LMB), 2019 WL 181119, at *7–8 (E.D. Va. Jan. 11, 2019) (finding that attempted murder is a crime of violence under the force clause set forth in § 924(c)(3)(A)). Accordingly, Chandler cannot rely on Simmons to make a showing that he is actually innocent of the § 924(c) conviction.[5]

---

[4] It is not relevant that Chandler was convicted under § 924(j) rather than § 924(c) because § 924(c) contains the controlling definition for § 924(j). United States v. Roof, 10 F.4th 314, 398 (4th Cir. 2021). Also, because the definition of "crime of violence" in § 924(c) is almost identical to the definition of "violent felony" in the Armed Career Criminal Act, decisions interpreting one such definition are persuasive as to the meaning of others. Id., n.61.

[5] Chandler also appears to argue that Count 10 cannot be used as the predicate offense for Count 11 because he was not convicted on Count 10. Reply, ECF No. 1480 at 3. It is well-established in the Fourth Circuit that § 924(c) convictions do not require a conviction on the predicate offense as long as there is at least some showing by the government that a reasonable jury could have convicted on the predicate offense. United States v. Carter, 300 F.3d 415, 425 (2002). See also United States v. Crawley, 2 F.4th 257, 264 (4th Cir. 2021) ("We have also held that 'a defendant's conviction under § 924(c)(1) doesn't depend on his being convicted either previously or contemporaneously—of the predicate offense, so long as the 'evidence was sufficient to permit the jury to find [the elements of the predicate offense] beyond a reasonable doubt.'") (quoting United States v. Crump, 120 F.3d 462, 466 (4th Cir. 1997)). In the plea agreement, Chandler stipulated that there was "a sufficient factual basis to support each and every material factual allegation contained within the charging document(s) to which [he] was pleading guilty." Plea Agreement, ECF No. 991. In the SOF, Chandler agreed that he participated in the planning of the shooting that killed Motley and that he was present at the scene even though he did not participate in the shooting. SOF, ECF No. 993 at 4–5. Therefore, the fact that he was not convicted on Count 10 does not affect its use as a predicate offense for Count 11.

Nor does Borden offer Chandler any relief. In Borden, the Supreme Court held that a criminal offense that requires only a mens rea of recklessness cannot count as a "violent felony" under the elements clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(i). Borden, 141 S.Ct. at 1834. This is because such offenses "do not require, as the ACCA does, the active employment of force against another person. And they are not the stuff of armed criminals." Id.[6]

Borden pled guilty to a felon-in-possession charge and the government sought to enhance the sentence under the ACCA. Id. at 1822. One of the three convictions alleged as predicate offenses was for reckless aggravated assault in violation of Tennessee law. Id. Borden argued that the offense was not a violent felony under the ACCA's elements clause because it required only a mens rea of recklessness. He asserted that only purposeful or knowing conduct could satisfy the clause's demand for the use of force "against the person of another." Id. The Court agreed, reasoning that the phrase "against another," when modifying "use of force," requires that the perpetrator "direct his action at, or target, another individual" and "[r]eckless conduct is not aimed in that prescribed manner." Id. at 1825. In addition, the Court found that "[t]he treatment of reckless offenses as 'violent felonies' would impose large sentencing enhancements on individuals (for example, reckless drivers) far afield from the 'armed career criminals' ACCA addresses…." Id.

---

[6] The ACCA provides for increased sentences for persons convicted under 18 U.S.C. § 922(g) when they have three previous convictions for a violent felony, a serious drug offense, or both. The statute defines "violent felony" as any crime punishable by imprisonment for a term exceeding one year that "has as an element, the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). This subsection of the statute is known as the force clause, or elements clause. Prior the to the Supreme Court decision in United States v. Johnson, 576 U.S. 591 (2015), the definition of "violent felony" also included "conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). This language was determined to be unconstitutionally vague in Johnson.

The Borden court explained that "purpose" and "knowledge" are the most culpable levels in the criminal law's mental-state "hierarchy" while "recklessness" and "negligence" are less culpable mental states because they instead involve only insufficient concern for risk of injury. Borden, 141 S.Ct. at 1823–24. The Court defined "knowledge" as existing when one "is aware that a result is practically certain to follow from his conduct," and "recklessness" to exist where one "consciously disregards a substantial and unjustifiable risk." Borden, 141 S.Ct. at 1823–24, 1825 n.4. The Court determined that "reckless" conduct could not be a crime of violence because it does not involve conduct directed at another. Id. at 827–28. However, the Court left open the question of whether "extreme reckless" conduct could satisfy the definition of crime of violence. Id. at 1825 n.4.

Chandler argues that after Borden, the offense of murder can no longer serve as a predicate offense for a § 924(c) firearm conviction because murder can be committed with a mens rea of recklessness. However, the Fourth Circuit decision in United States v. Manley, 52 F.4th 142 (2022), forecloses his argument. The Manley court looked at whether VICAR assault and VICAR murder must be committed with a sufficiently culpable mens rea to amount to crimes of violence necessary for conviction under 18 U.S.C. § 924(c) and concluded that both crimes require a mens rea greater than recklessness. Therefore, they are considered crime of violence for purposes of § 924(c).

The Virginia murder statute, Virginia Code § 18.2-32, includes two offenses--first-degree murder and second-degree murder. The court noted that the Virginia Supreme Court has held that Virginia's murder statute codifies the common-law crime of murder. Id. (citing Flanders v. Commonwealth, 298 Va. 345, 838 S.E.2d 51, 56 (2020)). The crime of second-

13

degree murder has two elements: the victim must be shown to have died as a result of the defendant's conduct and the defendant's conduct must be shown to be malicious. Id. (citing Essex v. Commonwealth, 228 Va. 273, 322 S.E.2d 216, 220 (1984)).[7] The Virginia Supreme Court has defined malice as "encapsula[ting] a species of reckless behavior so willful and wanton, so heedless of foreseeable consequences, and so indifferent to the value of human life that it supplies the element of malice." Watson-Scott v. Commonwealth, 298 Va. 251, 835 S.E.2d 902, 904 (2019).

The parties in Manley agreed that mens rea of "malice" amounts to "extreme recklessness." Using the culpability scale set forth in Borden, the Manley court concluded that "extreme recklessness," as defined by Virginia law, falls between "knowledge" and "recklessness" and is closer in culpability to "knowledge" than it is to "recklessness."

> As the Virginia Supreme Court has stated, the implied-malice element of second-degree murder encapsulates "a species of reckless behavior so willful and wanton, so heedless of foreseeable consequences, and so indifferent to the value of human life that it supplies the element of malice." Watson-Scott, 835 S.E.2d at 904 (cleaned up). The Virginia Supreme Court has explained that this malice element may be "implied by conduct" when the conduct is "so harmful" to the victim as to support an inference of malice. Id. (emphasis added) (cleaned up). While this definition may not describe precisely the "practically certain" state of "knowing," it comes close. It follows, we conclude, that this formulation necessarily requires conduct that uses physical force against another, as required by the definition of a crime of violence in § 924(c)(3)(A).

Manley, 52 F.4th at 151.

---

[7] The Manley court focused on second-degree murder because the parties agreed that the allegations in the indictment charged Manley with second-degree murder. Manley, 52 F.4th at 149.

First-degree murder requires an even greater degree of culpability than second-degree murder. Virginia Code § 18.2-32 defines first-degree murder as "any willful, deliberate, and premeditated killing." Generally, a conviction for premeditated murder under the statute requires proof of "'(1) a killing; (2) a reasonable process antecedent to the act of killing, resulting in the formation of a specific intent to kill; and (3) the performance of the act with malicious intent.'" Aldridge v. Commonwealth, 44 Va. App. 618, 654–55, 606 S.E.2d 538, 557 (Va. Ct. App. 2004) (quoting Rhodes v. Commonwealth, 238 Va. 480, 486, 384 S.E.2d 95, 98 (1989)).

What this means for Chandler is that whether the indictment charged him with first-degree or second-degree murder, either would be considered a crime of violence for purposes of § 924(c). No reading of Borden results in the conclusion that Chandler is actually innocent under its holding. Therefore, enforcing the waiver in the plea agreement does not result in a miscarriage of justice for Chandler and his argument is barred by the waiver.

### C. Ineffective Assistance of Counsel

Criminal defendants have a Sixth Amendment right to effective legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish that counsel's assistance was not reasonably effective, a defendant must satisfy a two-prong analysis: he must show both that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's alleged deficient performance. Strickland, 466 U.S. at 669.

When considering the reasonableness prong of Strickland, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance." Id. at 689; see also Gray v. Branker, 529 F.3d 220, 228–29 (4th Cir. 2008). "The performance of counsel is measured in terms of 'reasonableness under prevailing professional norms.'" Gray, 529 F.3d at 228 (quoting Strickland, 466 U.S. at 688). The court must judge counsel "on the facts of the particular case," and assess counsel's performance "from counsel's perspective at the time." Strickland, 466 U.S. at 689. In the context of failure to file a notice of appeal, the Supreme Court has long held that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). This is true even when a defendant has waived the right to appeal as part of a plea agreement. Garza v. Idaho, 139 S.Ct. 738, 747 (2019); United States v. Poindexter, 492 F.3d 263, 273 (4th Cir. 2007).

In his original § 2255 motion, Chandler alleged that during sentencing, he asked his attorney to file a notice of appeal and his attorney told him that he had waived that right. In his amended motion, he argues that Simmons was pending at the time he was sentenced and that his attorney should have filed a notice of appeal so that he could argue that Count 11 should be set aside if the Simmons court held that a RICO conspiracy is not a crime of violence for purposes of § 924(c). As explained above, Simmons did so hold, but because Chandler's § 924 conviction did not rest on his Count 1 RICO conviction, but on the Count 10 VICAR murder of Christopher Motley, Simmons did not affect his conviction.

Nevertheless, if Chandler had timely filed his § 2255 motion, his assertion that he asked his attorney to file a notice of appeal on his behalf and the attorney did not do so would have stated a claim for ineffective assistance of counsel under Flores-Ortega, Garza,

16

and Poindexter. However, because Chandler's § 2255 motion is untimely, his claim for ineffective assistance of counsel must be **DISMISSED**.

For the reasons stated above, the court finds that Chandler's motion is untimely and that he waived his right to collaterally attack his sentence on the ground that his conviction on Count 11 was unconstitutional. In addition, even if he had not waived the right to collaterally attack his sentence, his claim is without merit, as neither Simmons nor Borden affects his convictions. Accordingly, his motions to vacate, set aside, or correct his sentence are **DENIED**.

### III. Conclusion

Based on the foregoing, the court **DENIES** Chandler's § 2255 motions to vacate, set aside, or correct his sentence, ECF Nos. 1462, 1467. An appropriate Order was entered on July 11, 2023, and that Order is not affected by the correction made in this Amended Memorandum Opinion. The Clerk is **DIRECTED** to send a copy of this Amended Memorandum Opinion to Chandler.

It is so **ORDERED**.

Entered: July 15, 2023

*Digitally signed by Michael F. Urbanski, Chief U.S. District Judge*
*Date: 2023.07.15 15:01:57 -04'00'*

Michael F. Urbanski
Chief United States District Judge